IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK ANTHONY SCOTT,

    Plaintiff,                      No. 2:08-cv-0117 LKK JFM (PC)

    vs.

VALERIE GALLOWAY, et al.,

    Defendants.                 FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding through counsel with a civil rights action seeking relief under 42 U.S.C. § 1983. Plaintiff is suing a California Department of Corrections & Rehabilitation nurse and two doctors, claiming they exhibited deliberate indifference to his medical needs after he was mistakenly given medication prescribed for another inmate with the same last name, by attempting to cover up the mistake and by discontinuing his HIV medications without his knowledge or consent. Pursuant to a court order, plaintiff filed a second amended complaint on March 13, 2008. Defendants responded on August 13, 2008, with a motion to dismiss, based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.

        In his second amended complaint ("SAC"), plaintiff claims that he suffered an allergic reaction on June 12, 2007, around 9:40 a.m., when a nursing trainee filled a syringe with Pentamidine and handed it to Nurse Galloway who administered it to plaintiff in a breathing

1

1    treatment. Plaintiff was taking Dapsone at the time.[1] Plaintiff states Nurse Galloway returned
2    plaintiff to his cell without taking his vital signs. (SAC at 4.) Fifteen minutes later, plaintiff was
3    finding it more and more difficult to breathe. C.O. Rinetti first took plaintiff back to the U-Wing
4    clinic but both nurses were gone, so Rinetti rushed plaintiff to the Emergency Room.

5           On June 12, 2007, at 10:10 a.m., plaintiff was seen by a triage nurse, who
6    recorded plaintiff's vitals as Temperature 98.6, pulse 78, respiration 20, blood pressure 156/97,
7    and Oxygen Saturation 98%. (SAC at 36.) Plaintiff reported he had received the wrong
8    medication, noted his allergy and stated "I'm scared I'll die." He had received a "breathing
9    treatment, but no doctor's order for respiratory treatment." (SAC at 36.) The nurse opined that
10   plaintiff was anxious, looked scared, but ambulated without difficulty. His lung sounds were
11   diminished bilaterally. He was diagnosed as at risk for adverse reaction to respiratory therapy
12   wrong medication and was referred to Dr. Lang. (SAC at 36.) The "Urgent" box was checked:
13   "within twenty-four hours." (Id.) Plaintiff was advised to return to B-1 clinic if adverse reaction
14   occurred, and to increase fluids. (SAC at 36.) Plaintiff was discharged at 10:36 a.m. (Id.)

15          On June 16, 2007, plaintiff returned to the Emergency Room for difficulty
16   breathing and chest pain. (SAC at 8.) Plaintiff alleges these symptoms were a severe allergic
17   reaction caused by the combination of medications he had taken, Dapsone and Pentamidine.
18   (SAC at 5-8.) Dr. Bethlehem Haile put plaintiff on the EKG heart monitor twice. (SAC at 8.)

19          At some point, Dr. Narinder Saukhla stopped plaintiff's prescription for
20   Hydrochlorothiazide. (SAC at 8.) Plaintiff contends Dr. Saukhla tried to cover up the nurse's
21   mistake by attempting to change plaintiff's Dapsone prescription to Pentamidine knowing that
22   plaintiff mistakenly received Pentamidine on June 12, 2007, to which he had an allergic reaction.
23   (SAC at 5, 10.)

24   _____

25       [1] Plaintiff alleges that Dapsone is taken once a day and Pentamidine is taken once a
     month, and that before one is prescribed Pentamidine, the patient is to be off the Dapsone two
26   weeks or longer. (Second Amended Complaint ("SAC"), Attachment 2.)

On June 20, 2007, plaintiff discovered Dr. Haile had stopped all of plaintiff's HIV medications, even the Kletra - Truvada - Azithromycin. (SAC at 8.) Dr. Haile started the HIV medications again on June 20, 2007. (SAC at 8.)

On June 21, 2007, at 20:30 hours, a nurse again attempted to give plaintiff the wrong medication. (SAC at 12.) Plaintiff informed the nurse and she corrected the mistake before administering the dose.

On July 25, 2007, Dr. Haile stopped all of plaintiff's HIV medications for 23 days. (SAC at 5, 8-9.) Plaintiff alleges this medication was stopped for no reason and without his consent. (Id.)

On August 16, 2007, Dr. Saukhla re-started plaintiff's HIV medications. (SAC at 9.) Plaintiff alleges Dr. Saukhla knew plaintiff had an allergic reaction from the Dapsone and Pentamidine mixed together and thus kept trying to change plaintiff's prescription from Dapsone to Pentamidine because he knew Galloway had given plaintiff the wrong medication. Plaintiff avers that every time plaintiff saw Dr. Saukhla, he would try to change plaintiff's prescription. Thus, plaintiff started refusing to see Dr. Saukhla. Plaintiff alleges Dr. Saukhla was attempting to cover up the mistake.

Defendants seek to dismiss the lawsuit on two grounds. First, they contend plaintiff's Second Amended Complaint sets forth facts that establish defendants were not deliberately indifferent under 42 U.S.C. § 1983, and second, they contend the alleged facts fail to establish that plaintiff's medical needs were objectively serious.

ANALYSIS

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question. See Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976). The court must also construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). A motion to dismiss for failure to state a claim should not be granted

1  unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that
2  would entitle the plaintiff to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);
3  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).
4          In order to state a § 1983 claim for violation of the Eighth Amendment based on
5  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence
6  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).
7  The complaint must allege both that plaintiff's medical needs were objectively serious, and that
8  defendants possessed a sufficiently culpable state of mind.  Farmer v. Brennan, 511 U.S. 825,
9  837 (1994).  Furthermore, where the allegation is that delay of medical treatment evidenced
10  deliberate indifference, the plaintiff must show that the delay was itself harmful.  See McGuckin
11  v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992).
12          Here, the reasoning of Spann v. Roper, 453 F.3d 1007 (8th Cir. 2006)(per curiam)
13  is persuasive.  Id.  In Spann, a prisoner was given the wrong medication, fainted as a result, and
14  was left in his cell for more than three hours without medical attention.  Id.  The Eighth Circuit
15  found that the nurse did not "exhibit deliberate indifference" by requiring the plaintiff to take
16  another inmate's medication.  Id. at 1008.  The Spann court noted that "to succeed on [a]
17  deliberate-indifference claim, [the] plaintiff must show more than negligence or gross
18  negligence."  Id. (citing Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir.2000)).  However, the
19  Spann court remanded the case to determine whether the nurse was deliberately indifferent to the
20  plaintiff's medical needs when she left him in his cell for three hours after she was aware that he
21  had taken a large dose of another inmate's mental-health medications.  Spann, 453 F.3d at 1008.
22          Thus, plaintiff's first claim, that nurse Galloway was deliberately indifferent to his
23  serious medical needs because she mistakenly administered the medication prescribed for another
24  inmate with the same name as plaintiff, must fail.  The mistaken administration of medication
25  does not rise to the level of deliberate indifference.  Spann, 453 F.3d at 1008. This claim should
26  be dismissed.

1       Plaintiff's next claim is that nurse Galloway failed to take his vitals and returned
2  him to his cell without medical treatment for the administration of the wrong medication.
3  However, plaintiff has appended a health care services request form dated June 12, 2007, which
4  demonstrates that within 30 minutes from the time plaintiff was administered the wrong
5  medication, he was examined by a different registered nurse who recorded his vitals as
6  Temperature 98.6, pulse 78, respiration 20, blood pressure 156/97, and Oxygen Saturation 98%.
7  (SAC at 36.)
8       In his opposition, plaintiff provided a copy of Dr. Lang's report from his June 12,
9  2007 examination of plaintiff at 11:35 a.m.  (Opp'n at 13.)  Dr. Lang reported plaintiff's pulse
10 rate as 68, his respiration at 18, temperature was 96.8, and Oxygen Saturation rate was 99%.
11 (Id.)  Dr. Lang noted that plaintiff was calmly sitting and diagnosed the problem as "medical
12 error – usual side effects of Albuterol but no other problem."  (Id.)
13      Plaintiff also contends he sustained lung damage.  Plaintiff's April 30, 2007 chest
14 x-ray was normal, but on June 12, 2007, the RN noted that plaintiff's lung sounds were
15 diminished, and a chest x-ray on June 27, 2008 showed some mild increased markings at both
16 lung bases, particularly on the left.  (Opp'n at 8, 16.)  The radiologist stated he could not
17 "exclude a very early infiltrate" and recommended follow-up radiograph.  (Opp'n at 16.)
18      However, the radiologist also noted that the clinical indications for the chest x-ray
19 were a cough, decreased oxygen saturation and plaintiff's HIV positive status.  (Opp'n at 16.)
20      Plaintiff was seen by another medical professional within thirty minutes after he
21 was mistakenly administered the breathing treatment.  At that time, his temperature, respiration
22 and oxygen saturation level were within normal limits.  Before two hours passed from the
23 wrongful administration, plaintiff was seen by a physician, who also recorded plaintiff's vital
24 signs as within normal limits.  Plaintiff has failed to demonstrate that the delay between his
25 initial discharge and the RN's examination at 10:10 a.m., or the doctor's examination at 11:35
26 /////

a.m. on the same day, was the cause of the alleged lung injury.[2]  Thus, plaintiff's second claim fails as well.

With regard to plaintiff's claims as to Drs. Haile and Saukhla, this court cannot resolve them on a motion to dismiss.  In a motion to dismiss, the court looks only to the pleadings, and interprets them in a light most favorable to the non-moving party.  Although defendants refer to a June 11, 2007 Health Care Services Request form alleging plaintiff had presented with complaints of an uncontrollable skin reaction due to his medications and itching all over his body (SAC at 23), this information is contained in a second level appeal response appended to plaintiff's complaint, rather than the original medical record.  Plaintiff did not provide a copy of the June 11, 2007 request, nor any medical records confirming treatment for skin allergies with his original complaint.  Thus, the evidence relied upon by defendants in their argument is a matter of dispute.  Although a court may treat a motion filed pursuant to Rule 12(b)(6) as a motion for summary judgment, this court is unwilling to do so.

Plaintiff's complaint states a cognizable claim that Drs. Haile and Saukhla were deliberately indifferent to plaintiff's serious medical needs by attempting to cover up the wrongful administration of medication to plaintiff and by discontinuing HIV medications to plaintiff without his knowledge or consent.  Consequently, defendants' motion to dismiss defendants Haile and Saukhla should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that

1. Defendants' August 13, 2008 motion to dismiss (#12) defendant Galloway be granted, and defendant Galloway be dismissed from this action; and

2. Defendants' August 13, 2008 motion to dismiss defendants Haile and Saukhla be denied.

---

[2] Plaintiff also provided a copy of a radiology report dated June 27, 2008, which stated he was being evaluated for pneumocystis pneumonia (opp'n at 15), which suggests his chest x-rays were being performed in connection with his HIV status rather than as a result of the one mistaken dose of Pentamidine in a breathing treatment.

6

1   These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time may waive the right to appeal the District
8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9  DATED: January 28, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

001; scott117.mtd